IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JEFFREY MOORE, | ) |
| | ) Case No. 3:12-cv-529 |
| Plaintiff, | ) |
| | ) Judge Campbell |
| v. | ) Magistrate Judge Bryant |
| | ) |
| VOLUNTEERS OF AMERICA OF | ) Jury Demand |
| KENTUCKY, INC. | ) |
| | ) |
| Defendant. | ) |

## INITIAL CASE MANAGEMENT ORDER

In accordance with Federal Rule of Civil Procedure 26(f) and Local Rule 16.01(d)(2), counsel for Plaintiff Jeffrey Moore and Defendant Volunteers of America of Kentucky, Inc. ("VOAKY") submit this proposed Initial Case Management Order.

1. **Status of Service of Process:** Service of process is complete.

2. **Status of Responsive Pleadings:** VOAKY filed its answer to the complaint on June 27, 2012.

3. **Jurisdiction:** The Court has jurisdiction under 28 U.S.C. §§ 1332 and 1367(a). Jurisdiction is not disputed.

4. (a) **Plaintiff's Theory of the Case:** This is a retaliatory discharge from employment case brought under the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304 (TPPA) and Tennessee common law. Mr. Moore worked as a Licensed Practical Nurse (LPN) for Defendant at a group home for disabled individuals located at 209 Wellington Drive in Madison, Tennessee. The facility is referred to by Defendant and its agents as "Wellington."

In late 2011 and early 2012, after attempting to address the issue with his supervisors, Mr. Moore reported to the Tennessee Department of Health and Board of Nursing that Defendant

was having individuals practice nursing at Wellington without a license to do so. He further reported that residents were being neglected and experiencing medical complications. In early February 2012, Mr. Moore arrived for his work shifts at Wellington and noticed that the heat was not working and that it was extremely cold inside the Wellington home. Mr. Moore asked Defendant's Housing Coordinator, Monica Virgo, if the non-functioning furnace was going to be repaired or if any portable space heaters were going to be provided. She responded, "No."

Because nothing was being done about the heating problem and he was concerned about the residents, Mr. Moore contacted an oversight facility known as Clover Bottom or the Tennessee Department of Intellectual and Developmental Disabilities (DIDD) on February 4, 2012. He reported that Wellington was not being heated, that the home was extremely cold inside, that elderly and mentally disabled residents were suffering and experiencing neglect and exacerbated medical problems, and that something needed to be done to protect them. On February 4, 2012, Mr. Moore repeatedly advised Ms. Virgo and Defendant's Services Coordinator, Linda Ward, that it was extremely cold inside the Wellington home and that "the patients are cold." He further advised them that at least one of the residents was suffering from a serious medical condition.

On Sunday morning, February 5, 2012, Defendant's Director of Nursing, Suzanne Videon, contacted Mr. Moore and advised him not to report to work for his scheduled shift that evening but to report to the office on Monday morning, February 6, 2012, instead. Mr. Moore reported to the office on February 6, 2012, as instructed. Once there Defendant's Human Resources Coordinator, Karah Smith, stated to him that his employment was being terminated because he had called the State and reported his concerns about the conditions and practices at

2

Wellington. Ms. Smith did not say anything about any alleged unprofessional behavior by Mr. Moore in the discharge meeting.

Defendant discharged Mr. Moore in retaliation for reporting, opposing and refusing to remain silent about or participate in illegal activities, in violation of the TPPA and Tennessee common law. As a result of Defendant's conduct, Mr. Moore has suffered damages.

**(b) Defendant's Theory of the Case:**

Mr. Moore's termination from VOAKY's employ was based upon legitimate, nonretaliatory reason(s), including, but not limited to, the abusive and profane language used and belligerent behavior he exhibited when he spoke with a representative of DIDD on February 4, 2012. Mr. Moore's conduct was so inappropriate that the DIDD representative told VOAKY on February 4, 2012 that she was going to complete a Reportable Incident form detailing Mr. Moore's conduct. In the Reportable Incident form, the DIDD representative noted that Mr. Moore was "fussing and cursing (F & D words) and [was] very belligerent." The DIDD representative concluded her report by stating that Mr. Moore's conduct "sounded like staff misconduct."

With regard to Mr. Moore's claims under the TPPA and common law retaliatory discharge, VOAKY maintains that Mr. Moore did not have a reasonable belief that a law, regulation, or rule was being violated or would be violated by VOAKY. With regard to the TPPA claim, the fact that a heating unit was temporarily inoperable and was being repaired is not an "illegal activity" as defined by the TPPA. With regard to Mr. Moore's claim of common law retaliatory discharge, his reporting to the DIDD of a temporarily inoperable heating unit at the VOAKY facility did not violate a clear public policy of the State of Tennessee as evidenced by an unambiguous constitutional, statutory, or regulatory provision.

VOAKY also relies upon the affirmative defenses raised in its Answer and additionally asserts that Mr. Moore cannot establish a prima facie case under either the TPPA nor common law retaliatory discharge.

5. **Identification of Issues:** The following issues have been resolved: service of process, jurisdiction and venue. All other issues related to liability and damages are in dispute.

6. **Need for Additional Claims:** At this time, the parties do not anticipate a need for any counterclaims, cross-claims, third-party claims, amended pleadings, or class certification, or the need for resolution of any issues arising under Rules 13-15, 17-21, or 23 of the Federal Rules of Civil Procedure. Either party may seek to amend the pleadings in accordance with the Federal Rules of Civil Procedure, if appropriate. Absent leave of court, the deadline for filing motions to amend the pleadings is October 26, 2012.

7. **Initial Disclosures:** The parties will make their Rule 26(a)(1) disclosures within 30 days of the initial case management conference.

8. **Discovery Deadlines and Limitations:**

(a) **Close of Discovery:** All discovery will be completed by February 15, 2013. All written discovery will be served in sufficient time for responses to be in hand by the discovery deadline. There will be no stay of discovery before the deadline for completion of discovery, even if a dispositive motion is filed before that deadline, unless ordered by the Court.

(b) **Discovery Motions:** All motions related to discovery will be filed by March 6, 2013. No motions related to discovery or for a protective order will be filed until a dispute conference has taken place and the attorneys of record have attempted to resolve the dispute. The parties may also contact the Magistrate Judge in a good faith effort to resolve any discovery disputes as an alternative to filing a discovery motion.

**(c)    Expert Disclosures**: Plaintiff will identify any expert witnesses and provide Defendant (not file with the Court) all of the information specified in Rule 26(a)(2)(B) by November 16, 2012. Defendant will identify any expert witnesses and provide Plaintiff (not file with the Court) all of the information specified in Rule 26(a)(2)(B) by December 14, 2012. All expert discovery, including but not limited to depositions, will be completed by February 15, 2013.

**(d)    Third Party Subpoenas**: If there is discovery pursuant to Fed. R. Civ. P. 45, the parties agree to provide each other at least three (3) business days' advance notice prior to issuance of the subpoena.

9.    **Electronic Discovery and Electronic Service**: The parties have reached agreement on discovery of electronically stored information. Therefore, the default standard contained in Administrative Order No. 174 does not apply in this case. While the parties do not anticipate any issues with regard to the discovery of electronically stored information, if a discovery dispute arises with respect to such information the attorneys of record will engage in a dispute conference in an attempt to resolve any issues. If the dispute conference does not resolve the issues with regard to electronically stored information, the parties will have the right to either contact the Magistrate Judge in a good faith effort to resolve such dispute or may file a discovery motion with the Court as provided in Paragraph 8(b) herein.

10.    **Dispositive Motion Deadlines**: All dispositive motions will be filed by March 29, 2013. Responses will be filed within 31 days of the filing of the motion. Optional replies will be filed within 10 days of the filing of the response and shall not exceed five pages.

11.    **Pretrial Conference and Trial**: A pretrial conference and jury trial date will be set by separate order. The target jury trial date is August 13, 2013.

The parties anticipate that it will take three to four days to try this case. Judge Campbell will issue a separate order setting forth his requirements for the pretrial conference and the trial.

12. **Settlement:** The parties have had limited settlement discussions and believe that a judicially-conducted settlement conference or mediation may be appropriate following the completion of some discovery.

It is so ORDERED.

Entered August 6, 2012.

*s/ John S. Bryant*
Honorable John S. Bryant
United States Magistrate Judge

Approved for Entry:

s/Douglas B. Janney III
Douglas B. Janney III (BPR No. 19112)
2002 Richard Jones Road
Suite B-200
Nashville, Tennessee 37215
(615) 742-5900

Attorney for Plaintiff


s/Michael D. Hornback
Michael D. Hornback (BPR#22128)
Nina M. Kumar (BPR#29265)
**WYATT, TARRANT & COMBS, LLP**
2525 West End Avenue, Suite 1500
Nashville, Tennessee 37203
Telephone: (615) 251-6754
Facsimile: (615) 256-1726
(mhornback@wyattfirm.com)
(nkumar@wyattfirm.com)

Attorneys for Defendant Volunteers of
America of Kentucky, Inc.


60224336.1